IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHANTILLY STORE ALL, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:09-cv-921-MEF-CSC |
| | ) |
| SARAH SPEAR, *et al.*, | ) (WO- Do Not Publish) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Chantilly Store All, LLC ("Plaintiff") brings this suit against Sarah G. Spear ("Spear") in her individual capacity and in her official capacities as the Revenue Commissioner of Montgomery County, Alabama ("Revenue Commissioner") and as Secretary of the Board of Equalization of Montgomery County, Alabama ("Secretary of BOE")[1]; John Ashmore ("Ashmore") in his individual capacity and in his official capacity as Chief Clerk of the Revenue Department ("Chief Clerk"); and Debbie Richardson ("Richardson") in her individual capacity and in her official capacity as an Alabama Certified Appraiser for the Montgomery County Appraisal Department ("Certified Appraiser") (collectively, "Defendants"). (Doc. #23). Defendants filed a motion to dismiss pursuant to Rule 12(b)(6)

---

[1] ALA. CODE § 40-3-6 requires that the county tax assessor, or in this case the county Revenue Commissioner, serve as Secretary of the county's Board of Equalization. Because her service as Secretary was an extension of her duties as Revenue Commissioner, it has no effect on the subsequent analysis of her status as either state or county official.

of the Federal Rules of Civil Procedure. (Doc. #24). For the reasons set forth in this Memorandum Opinion and Order, that motion will be **GRANTED**.

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446. The parties do not assert that this Court lacks personal jurisdiction over them, and there is no dispute that venue is proper pursuant to 28 U.S.C. § 1391(b).[2]

## III. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. Therefore, for the purposes of adjudging a Rule 12(b)(6) motion to dismiss, the court will accept as true all well-pleaded factual allegations and view them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).

While Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," as a general matter, to survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff

---

[2] This case originated in Alabama state court, and was later removed to this Court. Plaintiff has since amended its Complaint in this case, yet continues to assert jurisdiction and venue pursuant to Alabama state statutes. (Doc. #23).

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 559. It is not sufficient that the pleadings merely leave "open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 561 (internal quotation and alteration omitted).

## IV. FACTUAL AND PROCEDURAL BACKGROUND

On October 12, 2007, Plaintiff was served in Montgomery County, Alabama with an evaluation notice for tax year 2007. The evaluation notice valued the property located at 8330 Minnie Brown Road, designated as Parcel No. 09-05-22-01-000-011.004 (the "Property"), at $4,051,600.00 and assessed a tax on this value at $29,576.68. Plaintiff objected to this valuation on October 15, 2007, arguing that the Property's value was actually $2,993,075.00. Plaintiff did not receive a response from the from the Montgomery County Appraisal Department (the "Appraisal Dept."), and on December 21, 2007, asked the Appraisal Dept. to submit the methodology used to determine the Property's value.

On December 27, 2007, the Appraisal Dept. conducted an informal hearing and indicated that the assessed value of $4,051,600.00 was correct. On December 28, 2007, Plaintiff paid the assessed tax of $29,576.68 under protest and requested a hearing before the Montgomery County Board of Equalization ("BOE") to review the valuation of the Property.

Having not received a response, on February 15, 2008, Plaintiff filed a specific request and applied for a hearing before the BOE. Plaintiff made repeated requests and on September 25, 2008 received a hearing with the BOE. On December 16, 2008, the BOE revalued the Property at $3,200,000.00, entitling Plaintiff to a refund of $6,211.31 (the "2007 refund").

On December 16, 2008, Richardson informed Plaintiff by letter that the Property was valued at $5,979,100.00 for tax year 2008. On December 26, 2008, Plaintiff tendered a check for $17,128.51 and requested that the 2007 refund be applied as a credit towards his total 2008 tax burden of $23,339.82 (the "2008 taxes").

On March 6, 2009, the Office of the Judge of Probate of Montgomery County, Alabama (the "Montgomery Probate Court") issued a notice to Plaintiff to "show cause if any you have, why a decree for the sale of said property . . . should not be made for the payment of the taxes thereon, and fees and costs." Plaintiff received no credit for the 2007 refund or the December 26, 2008 payment of $17,128.51 towards his 2008 taxes.

On March 12, 2009, Spear and/or Ashmore, choosing not to apply the 2007 refund to the 2008 taxes, issued a check in the amount of $6,216.68 to Plaintiff and payable to Plaintiff's chief operating officer. This check was sent after the notice sent by the Montgomery Probate Court on March 6, 2009.

On March 26, 2009, Plaintiff filed his response to the Montgomery Probate Court's notice to show cause with the Montgomery Probate Court and Spear in her capacity as

Revenue Commissioner within the requisite thirty day time period. However, Plaintiff received no reply to his response, and no trial was conducted pursuant to ALA. CODE § 40-10-8 (1975).

On April 3, 2009, Plaintiff tendered a check to Spear for $12,494.16 under protest and requested a hearing before the BOE. Plaintiff received no written response. In sum, Plaintiff paid a total of $29,622.67 toward the tax liability for 2008, more than his assessed liability of $23,339.82. However, in May 2008, Plaintiff was informed that the Property would be sold for taxes if Plaintiff did not tender an additional $1,531.13, representing penalties and interest, to Spear.

On May 12, 2009, Plaintiff filed for a writ of mandamus from the Circuit Court of Montgomery County, Alabama ("Montgomery Circuit Court"). (Doc. #5-1). Plaintiff asked the Montgomery Circuit Court to issue a writ of mandamus ordering Spear, in her capacity as Revenue Commissioner, to respond to Plaintiff's response to the Montgomery Probate Court's notice to show cause and to set a trial, pursuant to ALA. CODE § 40-10-8, on the issue of whether the tax sale of the Property should proceed. *Id.* Plaintiff also asked the Montgomery Circuit Court to issue a writ of mandamus ordering a hearing before the BOE on the 2008 valuation of the Property. *Id.*

On May 13, 2009, Spear and Ashmore acted to have the Property sold at auction due to the unpaid $1,531.13 in penalties and interest on the 2008 taxes that Plaintiff had been told to pay. On May 14, 2009, Plaintiff paid $1,531.13 to render the sale void.

On June 2, 2009, the appraisal division of the Revenue Commissioner's office revised the 2008 valuation of the property from $4,059,900[3] to $2,976,000, lowering the 2008 taxes to $21,724.80. Plaintiff had previously paid $31,153.80 in 2008 taxes,[4] entitling Plaintiff to a refund of $9,429. But on June 9, 2009, Plaintiff received a refund of only $7,897.87.

In summary, Plaintiff pleads that it did not receive payments for: (1) interest owed on the refunded 2007 overpayment of $6,211.31, an overpayment held by Spear for 423 days; (2) interest owed on the refunded 2008 overpayment of $7,897.87, an overpayment held by Spear for 60 days; or (3) the $1,531.13 paid by Plaintiff for penalties and interest on the 2008 taxes.

On July 28, 2009, the Montgomery Circuit Court asked the parties to reach a settlement over the amounts allegedly owed. Though the parties have attempted to reach a settlement, Defendants refuse to refund Plaintiff the $1,531.13 wrongfully paid for penalties and interest on the 2008 taxes. Defendants also refuse to pay Plaintiff's attorneys' fees incurred on these issues.

On September 4, 2009, Plaintiff filed an Amended and Supplemented Complaint in Montgomery Circuit Court, adding federal claims for the first time. (Doc. #5-3). On September 28, 2009, Plaintiff filed a Second Amended and Supplemented Complaint,

---

[3] Earlier in the Third Amended and Supplemented Complaint, Plaintiff pleaded that the 2008 valuation was $5,979,100.00. (Doc. #23, at 3). Plaintiff does not explain if and when this valuation was reduced to $4,059,900.

[4] Plaintiff paid $17,128.51 on December 26, 2008; $12,494.16 on April 3, 2009; and $1,531.13 on May 13, 2009.

including federal claims. (Doc. #5-5). On September 29, 2009, Defendants timely removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. (Doc. #5).

On December 16, 2009, with leave of the Court, Plaintiff filed its Third Amended and Supplemented Complaint. (Docs. #22 & 23). In Count I, Plaintiff brings claims pursuant to 42 U.S.C. § 1983 for deprivation of property without procedural due process in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 6 of the Alabama Constitution. In Count II, Plaintiff brings a claim pursuant to 42 U.S.C. § 1983 for an unlawful taking without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.[5] In Count III, Plaintiff brings a claim for attorneys' fees and expenses pursuant to the fee-shifting provisions of 42 U.S.C. § 1988. Plaintiff seeks only monetary damages. Defendants moved to dismiss the Third Amended and Supplemented Complaint pursuant to Rule 12(b)(6) on December 30, 2009. (Doc. #24).

## V. DISCUSSION

Defendants argue that Plaintiff fails to state a claim upon which relief can be granted. Additionally, Defendants argue that: (1) Defendants have immunity for all claims against them in their official capacities pursuant to the Eleventh Amendment of the United States Constitution and Article I, § 14 of Alabama's constitution; (2) Defendants are not "persons" for purposes of an action for damages under 42 U.S.C. § 1983; (3) there is no legal authority

---

[5] While the complaint does not reference § 1983 in connection with Count II, the Court assumes that Plaintiff intended for this claim to be brought through the statute as well.

allowing or authorizing the recovery of money damages for violations of Alabama's constitution; (4) Defendants have qualified immunity because Plaintiff has failed to allege and cannot establish either an underlying constitutional violation or that Defendants violated clearly established federal law; (5) Plaintiff lacks standing to assert a claim for a deprivation of procedural due process; (6) assuming a deprivation of procedural due process, Plaintiff has adequate post-deprivation remedies under state law; and (7) Plaintiff's claim for an unlawful taking without just compensation is not ripe.

### A.  Failure to state a claim against defendant Debbie Richardson

The Plaintiff's complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  While Plaintiff does allege in its Third Amended and Supplemental Complaint that Richardson appraised the Property in 2008, nowhere does Plaintiff allege that Richardson committed any of the constitutional violations complained of.  Even taking each pleaded fact as true, the Court cannot deduce a claim for relief from a constitutional violation against Debbie Richardson.  Therefore, the Plaintiff's claims against Richardson in both her official and personal capacities are DISMISSED.

### B.  Failure to state a procedural due process claim against Defendants

Plaintiff alleges that the Defendants deprived it of property without procedural due process by failing to provide Plaintiff with a trial before selling the Property in a tax sale. Plaintiff alleges that ALA. CODE § 40-10-8 provides the right to a trial before a taxpayer's

property is sold.  However, nowhere does Plaintiff allege that Defendants were responsible for ensuring the Plaintiff got a trial or that Defendants had the power to require, conduct, or set a trial. Because Plaintiff has not alleged that *these* Defendants violated Plaintiff's procedural due process rights, Count I of Plaintiff's Third Amended and Supplemented Complaint is DISMISSED.

### C.  'Persons' under § 1983

Count II of the complaint, as brought against defendants Spear and Ashmore, remains to be analyzed.  It is a § 1983 claim based on deprivation of property without just compensation.

Section 1983 authorizes claims for relief against a "person" who acted under color of state law.  42 U.S.C. § 1983.  The term 'person' as used in the statute encompasses state officials sued in their personal capacities, state officials sued in their official capacity for prospective relief, municipal entities, and municipal officials sued in their personal and official capacities. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989).  Whether a defendant sued in his official capacity is a state or local policy maker for purposes of § 1983 is determined by analyzing state law.  *McMillian v. Monroe County*, 520 U.S. 781 (1997).  The Court determines "the actual function of an official in a particular area by reference to 'the definition of the official's functions under relevant state law.'" *Turquitt v. Jefferson County*, 137 F.3d 1285, 1287 (11th Cir. 1998).

A municipality cannot be held liable under § 1983 for actions over which the

municipality had no responsibility. *See id.* at 1291-92. Therefore, whether or not Montgomery County supervised or controlled the Defendants in the collection of ad valorem taxes is vital to this inquiry. Because under state law the Alabama Department of Revenue has complete control over county tax collectors and assessors, including revenue commissioners, this Court determines that the Defendants are state officials for purposes of § 1983, and therefore not 'persons' subject to § 1983 liability.

Like all other tax collectors and assessors, the Montgomery County Revenue Commissioner is directly supervised by the Department of Revenue for the State of Alabama. ALA. CODE § 40-2-11(1) (1975). The statute provides in part that the Department of Revenue shall

> have and exercise general and complete supervision and control of the valuation, equalization, and assessment of property . . . taxes for the state and counties, and of the enforcement of the tax laws of the state, and of the several county tax assessors and county tax collectors, probate judges, and each and every state and county official, board, or commission charged with any duty in the enforcement of tax laws, to the end that all taxable property in the state shall be assessed and taxes shall be imposed and collected thereon in compliance with the law. . . .

*Id.* Created and defined by state statute, the Department of Revenue is undisputedly a state entity. *See* ALA. CODE § 40-2-1 *et seq.*; *State v. Tuskegee Univ.*, 730 So. 2d 617 (Ala. 1999) ("There is no question that the Department of Revenue is an administrative agency of the State of Alabama."). ALA. CODE § 40-2-11(1) "demonstrate[s] the Department of Revenue's general and complete control and supervision over the valuation, assessment, and collection of ad valorem taxes in Alabama." *Sims v. White*,

522 So. 2d 239, 241 (Ala. 1988).  The acts and practices of the Department of Revenue indicate that the Department recognizes its authority over the administration of ad valorem taxes.  *Id.* at 241-42.  In *State v. Tuskegee University*, the Alabama Supreme Court determined that for purposes of state law jurisdictional issues, an appeal of a Macon County revenue commissioner's decision was effectively "a challenge to an action or a decision fo the Department of Revenue."  730 So. 2d at 620.

Because the functions of the Revenue Commissioner are completely supervised by the State's Department of Revenue, the county has no responsibility or control over the administration of ad valorem taxes.  As such, the county cannot be held liable for the actions of the Revenue Commissioner, and the Revenue Commissioner is a state official for purposes of § 1983 liability.

Plaintiff seeks damages, costs, and attorney's fees, but not prospective relief against Spear.  (Doc. # 23). Therefore, according to *Will*, the Revenue Commissioner is not a 'person' as contemplated by § 1983, and the claims against Spear in her official capacity are due to be dismissed.  491 U.S. 58 (1989).

Since Ashmore was an employee of the Revenue Commissioner, it follows that he would also be a state official for purposes of § 1983. *See* 1991 Ala. Acts 91-365. Because a suit against a state official is a suit against the state, and the state is not a 'person' who can be sued for damages under § 1983, the claims against Ashmore in his official capacity must also be dismissed.

### D.  Eleventh Amendment Immunity

Even if the remaining Defendants were 'persons' capable of being sued under § 1983, the Defendants are entitled to Eleventh Amendment immunity.  The Eleventh Amendment bars suits in federal court against individual defendants acting as "arm[s] of the State." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429–30 (1997)).  As a suit against a government official in her official capacity is effectively a suit against the government entity, the government official is entitled to assert those immunities which the entity itself possesses.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The Court looks to the defendant's particular function when taking the actions giving rise to alleged liability to determine if the defendant was acting as an arm of the state.  *Id.* Therefore, in order to determine whether the Defendants may assert Eleventh Amendment immunity, the Court must determine whether they act as arms of the state when collecting and assessing ad valorem taxes.

The Court considers four factors in making this determination: (1) how the state defines the entity; (2) what degree of control the state maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgment against the entity.[6] *Williams v. Dist. Bd. of Trs.*, 421 F.3d 1190, 1192 (11th Cir. 2005) (citing *Manders*, 338 F.3d at 1309).  Though determining whether a defendant is an arm of the state for purposes of

---

[6] For this factor, the Court determines the source of funds that will pay any adverse judgment against the defendant acting in his or her official capacity.  *See Manders*, 338 F.3d at 1324.

Eleventh Amendment immunity is ultimately a question of federal law, the Court must consider state law to properly apply the four-part test. *See Williams*, 421 F.3d at 1192; *Manders*, 338 F.3d at 1309.

As discussed in subsection A above, state law gives the Department of Revenue complete control over the administration of ad valorem taxes. State case law indicates that Alabama defines its Revenue Commissioners as state officials. Therefore, both the first and second factors of the test annunciated in *Manders* weigh heavily in favor of finding that Spears and Ashmore were arms of the state.

Plaintiff argues in its Response to Defendants' Motion to Dismiss that because the county both elects and pays the salaries of the Revenue Commissioner, the Commissioner must be a county official. (Doc. # 27). However, these facts cannot outweigh the Department of Revenue's complete control over the Revenue Commissioner. Plaintiff's argument that a judgment against the Defendants would be paid by the county is not determinative either. While ALA. CODE § 40-7-9.1, the section cited by Plaintiff, does provide that refunds would be paid out of the next monies collected by the county, Plaintiff's suit is for damages suffered when Defendants allegedly violated his constitutional rights. Therefore, the provision cited by the Plaintiffs does not help to determine whether, for purposes of this suit, the county or the state would be responsible for paying the judgment. For these reasons the Court finds that Defendants are entitled to Eleventh Amendment immunity as arms of the state.

Plaintiffs argue that even if Defendants were entitled to Eleventh Amendment immunity, any immunity was waived when Defendants removed the case to federal court. In support of their proposition they cite *Lapides v. Board of Regents*, 535 U.S. 613 (2002). In *Lapides*, the Supreme Court narrowly tailored its holding to facts before the Court, finding that when a state has waived its immunity from state-court proceedings, and a defendant who is entitled to Eleventh Amendment immunity removes the case to federal court, the defendant waives its immunity. *Id.* at 617-20. The *Lapides* holding is not applicable in the present case, as there has been no argument that the state of Alabama waived its immunity. While some Circuits have chosen to apply the reasoning in *Lapides* beyond its narrow holding,[7] the Eleventh Circuit has not yet done so.[8] Regardless of whether the Defendants waived their Eleventh Amendment immunity, however, Plaintiff's claims against Defendants in their official capacity are dismissed on the grounds that Defendants are not 'persons' who can be sued under § 1983.

### E. Violations of Article I, § 6 of the Alabama Constitution

Plaintiff also brings a claim for relief based on Article I, § 6 of the Alabama Constitution. To the extent that Plaintiff is bringing a § 1983 claim based on a violation

---

[7] *See, e.g. Myers v. Texas*, 410 F.3d 236 (5th Cir. 2005). In that case, the Fifth Circuit found that "although the Supreme Court in *Lapides* circumspectly did not address any issue unnecessary to its decision, we believe that *Lapides*'s interpretation of the . . . waiver-by-removal rule, applies generally to any private suit which a state removes to federal court." *Id.* at 242.

[8] *See Dorsey v. Georgia Dept. of State Road and Tollway Auth.*, 2009 WL 2477565, at *5 (N.D. Ga. 2009).

of state law, the claim must be dismissed. Section 1983 "only provides an avenue for relief for the violation of federal rights." *Baker v. City of Alexander City*, 973 F. Supp. 1370, 1376 (M.D. Ala. 1997). Even to the extent that Plaintiff is relying solely on state law, the claim still must be dismissed. There is no mechanism in Alabama law similar to 42 U.S.C. §1983 by which a state actor can be held liable for damages for violation of the Alabama Constitution. *See Ross v. Alabama*, 893 F. Supp. 1545 (M.D. Ala. 1995) (expressing an inability to find an enabling statute or case law providing that such a cause of action exists).

### F.  Qualified Immunity

The only claim remaining in this case is Claim II to the extent that it is brought against Defendants Spear and Ashmore in their personal capacities. An official sued for damages in her personal capacity may assert qualified immunity from suit. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Such immunity offers complete protection for individual government officials performing discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Randall v. Scott*, 610 F.3d 701, 714 (11th Cir. 2010). Where, as here, qualified immunity is raised in a motion to dismiss, this Court must "look to the pleadings to see if the plaintiff has successfully alleged the violation of a clearly established right." *O'Rourke v. Hayes*, 378 F.3d1201, 1206 (11th Cir. 2004). Thus, the plaintiff's complaint must allege facts sufficient to plausibly support two

findings: "(1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was 'clearly established' at the time he did it." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).[9]

To demonstrate that Defendants' conduct violated clearly established law, Plaintiff must point to either (1) earlier case law from the Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court "that is materially similar to the current case and therefore provided clear notice of the violation, or (2) general rules of law from a federal constitutional or statutory provision or earlier case law that applied with obvious clarity to the circumstances." Long v. Slaton, 508 F.3d 576, 584 (11th Cir. 2007). The Eleventh Circuit has long held that the cited case law or general rule must be factually "materially similar" in order to give notice to the Defendants that their conduct might violate federal rights. *Id.*

Between its Third Amended and Supplemented Complaint and their brief in Opposition to Defendant's motion, Plaintiff cites only to the Fifth and Fourteenth Amendments to the United States Constitution and the case *United States v. Sperry Corp.*, 493 U.S. 52 (1989) in support of their proposition that Defendants violated clearly established law. The cited provisions of the Constitution are much too broad to put

---

[9] Defendants argue that the Eleventh Circuit applies a heightened pleading standard in § 1983 cases. Since the filing of these briefs, the heightened pleading standard has been subsumed by the Supreme Court's *Twombly-Iqbal* line of cases. *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).

Defendants on notice that their conduct might violate Plaintiff's rights and do not apply to the facts of this case with the necessary obvious clarity. Additionally, the sole case Plaintiff cites regards whether a user fee taken from a judgment awarded from the Iran-United State Claims Tribunal and paid into the Federal Reserve Bank was an unconstitutional taking. *Sperry*, 493 U.S. at 54-58. This case is not materially similar to the instant one. *Sperry* discusses neither the collection of penalties and interest on late taxes nor the state's failure to pay interest on taxes later refunded. Additionally, this Court's review of the relevant bodies of state and federal case law has not revealed any cases that would have put the Defendants on notice that their actions violated Plaintiff's federal rights. Plaintiff has not met its burden of establishing that the Defendants violated clearly established federal law.

Because Plaintiff cannot meet the "clearly established law" prong of the qualified immunity test, Defendants Spear and Ashmore are entitled to qualified immunity as to Count II to the extent it is brought against them in their personal capacities. Accordingly, this count of the complaint is also due to be DISMISSED.

As there are no remaining counts or defendants, the Court need not reach Defendants' argument that Plaintiff lacks standing, that Plaintiff has adequate post-deprivation remedies under state law, or that Plaintiff's claim is not ripe.

## VI. CONCLUSION

Defendants' Motion to Dismiss is hereby GRANTED in its entirety and Plaintiff's suit is DISMISSED.

DONE this the 22nd day of October, 2010.

/s/ Mark E. Fuller<br>
CHIEF UNITED STATES DISTRICT JUDGE